UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT GRAHAM, :
:
    Petitioner :
: No. 1:16-CV-00839
vs. :
: (Judge Rambo)
TREVOR A. WINGARD, et al., :
:
    Respondents :

## **MEMORANDUM**

On May 11, 2016, Petitioner Robert Graham, an inmate at the State Correctional Institution at Somerset, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he challenges a sentence of 11 to 22 years imposed on May 30, 2012, by the Court of Common Pleas of Lycoming County, Pennsylvania, after being found guilty by a jury, inter alia, of robbery. (Doc. No. 1.)

The Court on May 16, 2016, issued and Administrative Order informing Graham of the limitations upon his right to file another habeas petition in the future if his current petition was considered on the merits by the Court. (Doc. No. 3.) On May 25, 2016, Graham returned the notice election in which he stated that he desired that the Court rule on his petition as filed. (Doc. No. 4.) Respondents have subsequently responded to the petition. (Doc. No. 18.) For the reasons that follow, the petition will be denied.

**I.     Background**

The procedural and factual background of this case has been aptly set forth by the Pennsylvania Superior Court in its decision affirming the Post Conviction Relief Act ("PCRA") court as follows:

> In the early morning hours of June 22, 2009, a man in dark sunglasses and a hooded camouflage sweatshirt held up the Uni-Mart convenient store on West Fourth Street in Williamsport. Brandishing a firearm, the robber ordered the clerk to open the register, grabbed $117 in case, threatened to shoot the clerk, and demanded she open the store safe. When the clerk informed the robber that she was unable to open it, the perpetrator stole five cartons of cigarettes and fled the scene.
>
> In their subsequent investigation of the robbery, officers were able to obtain latent fingerprints from the cash drawer and two other cartons of cigarettes. After the fingerprints were sent to a Pennsylvania State Police laboratory, Sergeant Floyd Bowen determined that one of the fingerprints on the cash drawer matched [Petitioner's] left thumbprint. Approximately ten months after the robbery, the Uni-Mart clerk contacted police after she recognized [Petitioner] in a newspaper photo as the individual who robbed her.
>
> [Petitioner] was charged with two counts of robbery, theft by unlawful taking, receiving stolen property, terroristic threats, and possessing an instrument of crime. [Petitioner] filed a pretrial motion, requesting a Frye hearing to challenge the admissibility of the Commonwealth's expert testimony with respect to the latent fingerprints found in this case. The trial court denied this pretrial motion.
>
> [Petitioner] proceeded to a jury trial and was convicted of all the aforementioned offenses. The trial court imposed

> an aggregate sentence of eleven to twenty-two years imprisonment. [Petitioner] filed a post-sentence motion, which the trial court denied. On October 30, 2013, this Court affirmed [Petitioner's] judgment of sentence. See Commonwealth v. Graham, 1714 MDA 2012 (Pa. Super. Unpublished memorandum filed Oct. 30, 2013).
>
> On January 8, 2014, [Petitioner] filed a pro se PCRA petition … The PCRA court notified [Petitioner] of its intent to dismiss his petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907 … In response, [Petitioner] filed an amended petition raising additional issues. After further review, the PCRA court dismissed the petition without a hearing.

Commonwealth v. Graham, 2163 MDA 2014 (Pa. Super. Jan. 28, 2016). The Superior Court subsequently affirmed the PCRA court's decision. Id.

Issues germane to the instant petition that were raised by Graham on direct appeal were: (1) whether the court erred in the denial of a Frye hearing regarding expert testimony in fingerprinting, and (2) whether the court erred in determining that … no Batson claim existed after the Commonwealth struck the only African-American juror in the jury panel. (Doc. No. 18-1, at 46.) Relevant issues raised by Petitioner in his PCRA petition were: (1) whether PCRA counsel was ineffective for failing to raise a layered ineffectiveness of trial counsel's failure to raise prosecutorial misconduct related to the admissibility of evidence with regard to the fingerprint evidence, and (2) failure to argue a Batson claim. (Doc. No. 18-1 at 135, 136.)

While Graham filed this habeas petition on May 11, 2016 raising four grounds, he subsequently filed a motion to correct illegal sentence on August 2, 2016 with the Court of Common Pleas of Lycoming County. (Doc. No. 18-1, at 168-169.) The county court, treating the motion as a petition filed under the PCRA, dismissed the petition as untimely. (Id. at 171-74.) A review of the record and an independent search of the publicly available records of this case by this Court does not indicate that Graham ever appealed this decision.

## II. Discussion

It is first necessary to determine whether Graham's claims presented in his habeas petition have been adequately exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default. The claims raised by Graham as grounds for relief are: (1) the Commonwealth violated Batson[1] when it exercised a peremptory challenge to strike the sole African American juror on the panel; (2) he was denied a Frye[2] hearing to challenge to validity of the fingerprint evidence; (3) his conviction should be reversed because it was based on contaminated evidence; and (4) the prosecutor presented fingerprint testimony when the prosecutor knew that no

---

[1] Batson v. Kentucky, 476 U.S. 79 (1986). In Batson, the United States Supreme Court reaffirmed the principle that the government denies a defendant equal protection of the laws when it "puts him on trial before a jury from which members of his race have been purposefully excluded." Id. at 85.

[2] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). The Frye tests is the standard which governs the admissibility of scientifically-adduced expert evidence in Pennsylvania courts.

fingerprint examiner could legitimately identify the fingerprint. (Doc. No. 1.) In their answer to Graham's petition, Respondents contend that there was no Batson violation because the decision to strike the sole African American juror was made before the juror had entered the court room and without knowledge of the race of the juror. (Doc. No. 18.) Moreover, the prosecutor had provided a race-neutral reason for striking the juror. (Id.) Respondents also contend that there was no error by the county court in finding that fingerprint evidence was admissible without the necessity of a Frye hearing, and that to the extent Petitioner is raising issues in grounds two through four that are unrelated to the failure to conduct a Frye hearing, these issues have been procedurally defaulted. (Id.)

### A. Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351(1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, 558 U.S. 53 (2009); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).

Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claim prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). Nevertheless, a petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

Turning to procedural default, if a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally

defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750; Caswell v. Ryan, 953 F.2d 853, 857, 861-62 (3d Cir. 1992). To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. Coleman, 501 U.S. at 750. To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, a petitioner must then prove "prejudice." "Prejudice" must be something that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494. Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice. See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

### B. Claims Presented in the Habeas Petition

#### 1. Claim One – <u>Batson</u> Violation

Graham first argues that the Commonwealth discriminated against him by picking an all-white jury and striking the sole African American from the jury pool. (Doc. No. 1 at 9.) The Equal Protection Clause of the Fourteenth Amendment provides that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., AMEND. XIV, § 1. In <u>Batson v. Kentucky</u>, 476 U.S. 79, 86–88 (1986), the Supreme Court held that a prosecutor's use of a peremptory challenge to exclude an individual from jury service based on his or her race constitutes a violation of the Equal Protection Clause. This type of discriminatory use of a peremptory challenge violates the constitutional rights of the prospective juror as well as the constitutional rights of the defendant tried before the eventual jury. <u>Batson</u>, 476 U.S. at 86 ("Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure."). Because the race-based exclusion of prospective jurors from a jury panel constitutes a "structural" error that fundamentally undermines public confidence in the criminal justice system, a finding that such an exclusion has occurred in a particular criminal case warrants the automatic reversal of the defendant's conviction. <u>Rivera v. Illinois</u>, 556 U.S. 148, 159-161 (2009).

In order to demonstrate a Batson violation,

> an appellant must generally demonstrate his particular factual situation satisfies the well[-]established test laid out by the United States Supreme Court's opinion in that case: First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for his peremptory challenges. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

Commonwealth v. Simpson, 66 A.3d 253, 261 (Pa. 2013.)

Here, the record is undisputed that the Commonwealth struck the only African American juror in the jury pool and that Graham raised a timely objection. (Doc. 18-1, at 60, 144.) The prosecutor articulated that he intended to strike the juror before the jury pool ever entered the courtroom and was based on the fact that the juror had been previously charged with, but not convicted of, indecent assault. (Id. at 144.) The prosecutor stated:

> I don't want to take a juror who's been charged with certain types of crimes. Don't get me wrong, I don't strike DUI's and things like that in general, but other crimes, serious crimes where they're charged and the charges result in a dismissal, they may feel they're treated unfairly by the system so I intend to strike.

(Id.) This was confirmed by another prosecutor that verified that the decision to strike the juror was made prior to the juror entering the courtroom at the time when the prosecutor was unaware of the race of the juror. (Id.)

9

A defendant's burden under Batson's first step requires a defendant to show "more than the bare fact that the minority venire-person was struck by peremptory challenge." Soria v. Johnson, 207 F.3d 232, 239 (5th Cir. 2000) (internal quotations and citation omitted). "Where the only evidence is that a black prospective juror was struck, a prima facie Batson claim does not arise. United States v. Branch, 989 F.2d 752, 755 (5th Cir. 1993). Moreover, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768 (1995). Rather, it is the opponent of the strike that must prove purposeful discrimination under Batson.

Here, Graham's showing goes no further than arguing that the prosecution used its peremptory strike against the sole African American on the jury pool. While the burden remains on Graham to prove purposeful discrimination, Graham does not make any credible allegation that this individual was stricken on account of his race. Moreover, the trial court found the prosecutor's statement that he lacked knowledge about the juror's race prior to deciding to strike that juror to be credible as well as the race-neutral reason for the strike. Accordingly, the Court will deny Graham's Batson claim.

## 2. Claim Two – Denial of Frye Hearing

In his second claim for habeas relief, Graham claims that he was denied a Frye hearing[3] to challenge the validity of the fingerprint evidence. (Doc. No. 1 at 12.) Respondent argues that this claim does not provide a basis for federal habeas relief because it is a matter of the admissibility of evidence pursuant to state law. (Doc. No. 18 at 11.) The Court agrees. The purpose of a Frye hearing is only to determine whether expert testimony and evidence has gained general acceptance in the scientific community and is therefore admissible under Pennsylvania law. See Commonwealth v. Walker, 92 A.3d 766, 780 (Pa. 2014); Perez v. Graham, No. 13-CV-1428, 2014 WL 523409, at *9 (S.D.N.Y. Feb. 5, 2014), report and recommendation adopted, 2014 WL 805958 (S.D.N.Y. Feb. 28, 2014). Petitioner's second claim is a state evidentiary matter wholly separate from the question of whether the admission of such evidence violates the federal Constitution. (Id.)

Generally, mere errors of state evidentiary law are not cognizable on habeas review. See 28 U.S.C. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

---

[3] A Frye hearing is used by the Pennsylvania Courts to determine the admissibility of expert testimony, utilizing the "general acceptance" standard accounted in Frye v. United States, 293 F. 1013 (B.C. Cir. 1923). While that standard has been replaced in the federal courts by the one accounts in Daubert v. United States, 509 U.S. 579 (1993), Pennsylvania continues to apply it. Commonwealth v. Crews, 640 A.2d 394 (Pa. 1994).

States." (citations omitted)). For this claim to be cognizable in this habeas proceeding, Graham would have to demonstrate not only that the trial court's decision to admit fingerprint evidence without conducting a Frye hearing was erroneous, but also that this error violated an identifiable constitutional right and deprived him of a "fundamentally fair trial." See Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004) (quoting Rosario v. Kuhlman, 839 F.2d 918, 925 (2d Cir. 1988)). As such, Graham would "bear[] a heavy burden because evidentiary errors generally do not rise to constitutional magnitude." Copes v. Schriver, No. 97-CV-2284, 1997 WL 659096, at *3 (S.D.N.Y. Oct. 22, 1997) (citation omitted).

Because Graham fails to identify any federal constitutional right that was violated by the trial court's failure to conduct a Frye hearing, the alleged state-law error is not cognizable on federal habeas review and Graham's second claim for habeas relief will be denied.

### 3. Claim Three – Contaminated Evidence

Graham's third claim for habeas relief is that his conviction should not stand because Sgt. Floyd Bowen and Lt. Duck contaminated the fingerprint evidence because of their mishandling it. (Doc. No. 1 at 14.) This claim is different than those raised by Graham on his direct appeal and PCRA petition. The issue raised on direct appeal was "whether the Commonwealth failed to provide sufficient evidence to prove [Graham's] guilt since the cash drawer was never sent for proper

fingerprint analysis…." (Doc. No. 18-1 at 46.) In his PCRA petition, the issue raised was "whether PCRA counsel was ineffective for failing to raise all prior [counsel's] ineffectiveness reaching back to trial counsel's ineffectiveness for failing to request [an] interlocutory appeal of [the] trial court's denial of [a] <u>Frye</u> hearing, where [a] hearing was determinative of methodology used to identify [Graham's] partial thumbprint on [a] cash drawer by IAFIS[4] search, without this evidence cause would not have existed to arrest [Graham]. (<u>Id.</u> at 136.) Neither of these allegations include a claim of contaminating the fingerprint evidence. Therefore, this claim is unexhausted as well as procedurally defaulted, as it appears that any subsequent PCRA petition filed by Graham would be untimely. <u>See</u> Pa. Cons. Stat. Ann. § 9545(b) (petition must be filed within one year of the date judgment becomes final).

Turning to whether procedural default can be excused, Graham presents no argument to support either cause and actual prejudice, or a fundamental miscarriage of justice, so as to excuse procedural default of this issue. <u>See</u> <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999). Accordingly, Graham's third claim for relief will be denied.

To the extent that Graham contends that the verdict was against the weight of the evidence, a federal habeas court has no power to grant habeas relief because

---

[4] Integrated Automated Fingerprint Identification System.

it finds that the state conviction is against the weight of the evidence. Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985); Dove v. York County, Pa, Civ. No. 3:12-1517, 2013 WL 6055226, at *18 (M.D. Pa. Nov. 15, 2013). A weight of the evidence claim concerns a determination by the fact finder that certain evidence was more credible than other evidence. Dove, 2013 WL 6055226, at * 18. "Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses who demeanor has been observed by the state trial court, but not by them." Marshall, 459 U.S. at 434.

### 4. Claim Four – Prosecutorial Misconduct

In Graham's final claim for relief, he alleges prosecutorial misconduct in that the prosecutor used tainted/contaminated evidence in the form of a fingerprint in pursuing its case against him. (Doc. No. 1 at 16.) It also appears that Graham alleges prosecutorial misconduct when the prosecutor presented the testimony of the victim of the Uni-Mart who identified Petitioner at trial as the person who robbed her because her testimony was inconsistent. (Id.) While the Court notes that these specific prosecutorial misconduct claims do not appear to have been raised in the state courts, the substance of the latter part of Graham's fourth claim appears to have been. (See Doc. No. 18-1 at 49.)

The first part of Graham's contention, i.e., that the fingerprint evidence was contaminated, has been addressed <u>infra</u>, and the Court will dismiss this portion of Graham's fourth ground for those same reasons as set forth above. Indeed, Graham's argument, distilled down to its essence, is that the jury should have found his expert more credible than the Commonwealth's expert with regard to the fingerprint evidence. This Court has "no license to redetermine credibility of witnesses who demeanor has been observed by the state trial court…." <u>Marshall</u>, 459 U.S. at 434.

With regard to the latter part of Graham's contention, i.e., the prosecutor engaged in misconduct by presenting the testimony of the Uni-Mart victim who identified at trial the Petitioner as the person who robbed her, the Pennsylvania Superior Court provided the following analysis:

> [T]he Uni-Mart clerk[] … first identified [Graham] upon observing his photograph in a newspaper eleven months after the robbery. The photograph was attached to a story caption with the headline, "city man jailed on charges of armed robbery." [Graham] contends that these facts compromised [the Uni-Mart clerk's] identification, and he also argues that [her] testimony was inconsistent…
>
> The trial court determined that the inconsistencies in [her] testimony were not materially different from her previous testimony and, further, that whatever inconsistencies existed were matters of credibility left for the jury's determination.
>
> At the preliminary hearing [the Uni-Mart clerk] indicated that the perpetrator was a few inches taller than she was, her height being 5' 4". At trial, she indicated that the

15

perpetrator was approximately 5' 9". At the preliminary hearing, [she] testified that she was not sure if the robber was wearing a hat or hood. At trial, she said the robber was wearing a hood and sunglasses. At the preliminary hearing, she said the robber was in the store for approximately five minutes. At trial, it was specifically determined by videotape evidence that the robber was in the store for just over one minute. Finally, [she] only identified [Graham] after seeing his picture in the newspaper article headline, "City Man Jailed on Armed Robbery Charges." [The Uni-Mart clerk] testified that she was able to recognize [Graham] from the bottom half of his face that was visible underneath his hood and sunglasses. She said she did not notice the headline or read the accompanying article when she saw [Graham's] photo.

All of these matters were brought to the attention of the jury during [Graham's] cross-examination of [the Uni-Mart clerk]. We find no error in the trial court's determination that the jury's credibility assessments on these matters did not shock the conscience of the trial court. There were no facts in this case contradicting the verdict that were of such undeniably great weight that the trial court could rationally conclude that justice had been obviously denied by [Graham's] conviction….

(Doc. No. 18-1 at 49-52.)

The Court will treat this claim as one challenging the prosecutor's elicitation of false testimony from the Uni-Mart clerk given that Graham argues "how can [the Uni-Mart clerk] all of a sudden identify [him] from a newspaper when she never [saw] the face of the person that robbed her 10 months previously." (Doc. No. 1 at 17.)

In order to sustain a claim of constitutional error resulting from prosecutorial misconduct in the use of false testimony, the petitioner must establish that the witness actually perjured herself, and that the "prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony." Prosdocimo v. Sec'y, Pa. Dep't of Corr., 458 F. App'x 141, 147 n. 5 (3d Cir. 2012) (quoting United States v. McNair, 605 F.3d 1152, 1208 (11th Cir. 2010)). "[M]ere inconsistencies in testimony fall short of establishing perjury and most certainly do not establish that the [prosecutor] knowingly utilized perjured testimony." Jones v. Kyler, Civ. No. 02-09510, 2005 WL 5121659, at *8 (E.D. Pa. Aug. 3, 2005) report and recommendation adopted, Civ. No. 02-9510, 2007 WL 187689 (E.D. Pa. Jan. 22, 2007) (quoting United States v. Thompson, 117 F.3d 1033, 1035 (7th Cir. 1997) (citation and internal quotation marks omitted); United States v. Mershon, No. 10-1861, 2010 WL 4104665, at *8 (E.D. Pa. Oct. 19, 2010) ("The mere presence of inconsistent statements … does not establish that the prosecutor willfully presented perjured testimony.") In fact, "[t]here are many reasons testimony may be inconsistent; perjury is only one possible reason." Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004).

The Court finds that the few discrepancies between the witnesses' testimony during the preliminary hearing and at trial does not establish that the testimony offered by the Uni-Mart clerk was actually perjured. Moreover, as observed by the

Pennsylvania Superior Court, these issues were "brought to the attention of the jury during [Graham's] cross-examination of the [Uni-Mart clerk]." (Doc. No. 18-1 at 51.) See Jones, 2005 WL 5121659, at *9 (providing that there is a "well-established truth-telling vehicle of cross examination to highlight … perceived … inconsistenc[ies]."). Accordingly, the Court does not find any prosecutorial misconduct and will dismiss this final ground of Graham's petition.

### III. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). In the instant matter, jurists of reasons would not find the disposition of Petitioner's petition debatable. As such, no COA will issue.

## IV. Conclusion

For the foregoing reasons, Graham's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied and a COA will not issue. An appropriate Order follows.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: October 12, 2017